**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KURT ARTHUR MEYER,

    Petitioner - Appellant,

v.

SCOTT CROW,

    Respondent - Appellee.

No. 22-6024
(D.C. No. 5:20-CV-01125-J)
(W.D. Okla.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**[*]
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Petitioner Kurt Meyer, an Oklahoma state prisoner appearing pro se, requests a certificate of appealability ("COA") so that he may appeal the district court's order dismissing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because Meyer has failed to satisfy the standards for issuance of a COA, we deny his request and dismiss this matter. We also deny his recently filed motion for a hearing and appointment of counsel.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Meyer and his wife, Kathleen Wilkins-Meyer, owned a ranch and business in Oklahoma. Wilkins-Meyer began to suspect her husband frequented prostitutes, and in 2013, she filed for divorce. The divorce was acrimonious. Meyer stalked his estranged wife and continued to frequent prostitutes. While proceedings were pending, Wilkins-Meyer received possession of the house and Meyer received possession of the adjacent ranch and related buildings. On November 14, 2014, Wilkins-Meyer was discovered dead next to a ladder in the property's tack room. Meyer maintains she fell to her death changing a lightbulb or alternatively theorizes that two or more prostitutes he frequented conspired to kill Wilkins-Meyer. The State theorized that Meyer feared losing assets to her in the divorce, so he faked an alibi, strangled Wilkins-Meyer to death, dragged her body into the tack room, and badly staged the scene to make it look like an accidental death. The State based this theory on overwhelming evidence, including handwritten notes in which Meyer planned the murder, phone records, autopsy results, and obvious signs of foul play at the scene.

Meyer was tried and convicted in Oklahoma state court of murder in the first degree with deliberate intent. He was sentenced to life imprisonment without the possibility of parole. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed his conviction on direct appeal. The state district court denied Meyer's application for state post-conviction relief, the OCCA remanded for entry of an order properly setting out findings of fact and conclusions of law, and the state district court entered

such order again denying Meyer's application.  The OCCA affirmed.  Meyer filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court.  On November 15, 2021, a magistrate judge issued a thorough report and recommendation recommending the petition be denied.  Meyer objected, and on January 31, 2022, the district court adopted the report and recommendation and denied the petition.  Meyer seeks a COA to appeal the dismissal of his § 2254 petition.

## II

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).  "Federal law requires that he first obtain a COA from a circuit justice or judge." *Id*. (citing 28 U.S.C. § 2253(c)(1)).  To obtain a COA, a state prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This requires the prisoner to "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  In other words, the prisoner must show that the district court's resolution of the claims was "debatable or wrong." *Slack*, 529 U.S. at 484.

We review the district court's legal analysis de novo.  *Smith v. Duckworth*, 824 F.3d 1233, 1241–42 (10th Cir. 2016).  A state prisoner seeking federal habeas relief must show that the state court's resolution of his or her claims (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it 'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Smith*, 824 F.3d at 1241 (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)). And a state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000).

"[I]f the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Id.* at 1241 (alterations in original) (quoting *Ryder*, 810 F.3d at 739).

Because Meyer appears pro se, we construe his filings liberally, but we do not serve as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

4

III

Meyer is not entitled to a COA because reasonable jurists could not debate that the district court correctly denied his petition. He asserts eight issues on appeal, some of which overlap or collapse multiple grounds for relief under one heading. We find none persuasive and will address each in turn.

A

In Issue One, Meyer asserts the trial court should have suppressed evidence against him due to a November 14, 2014, warrantless seizure of two of his cellphones and a later cell site location information ("CSLI") analysis of a call made from a different cellphone, which Meyer asserts was not his. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Meyer had a full and fair opportunity to litigate his Fourth Amendment claims in state court. Counsel moved to suppress, the trial court held a hearing before denying suppression, and counsel objected to the entry of the evidence at trial. He is not entitled to a COA on this issue given the full examination of his Fourth Amendment claims in state court.

B

In Issue Two, Meyer asserts the district court erred in determining that his claims for abuse of discretion and bias, and for insufficient evidence, were

unexhausted or procedurally barred.  In the district court, Meyer asserted a number of arguments that this issue could be intended to address.  He makes no effort to specify which of those he pursues on appeal, nor does he make any effort to point us to the portions of the record where he raised those claims in state court.  Elsewhere, Meyer goes into more detail on substantially the same issues, so we address his claims there.

C

In Issue Three, Meyer asserts the OCCA's recitation of facts on direct appeal contains errors and is therefore not entitled to deference.  He also claims there were multiple instances of prosecutorial misconduct which occurred during his trial.

Like the district court, we can determine from the face of the OCCA's opinion that it did not base its substantive conclusions on the factual errors Meyer alleges. Moreover, Meyer makes no effort to identify how these alleged factual errors could have affected the OCCA's resolution of his direct appeal, or how our refusing to give deference to the OCCA's rulings regarding the alleged factual errors might affect our legal analysis.

Meyer claims comments by the assistant district attorney during voir dire and closing arguments constitute prosecutorial misconduct.  He raises additional claims of prosecutorial misconduct regarding the assistant district attorney's referring to "murder notes," misstating witness testimony, coaching a witness, and making other statements and arguments regarding the presumption of innocence.  Taken together, Meyer claims he was denied a fair trial.

During voir dire, the assistant district attorney asked a prospective juror: "Do you understand that that burden – that presumption [of innocence] goes away when the evidence starts popping up?" ROA Vol. 1 at 423. Meyer's counsel objected, and the district attorney withdrew the question. Counsel also objected to the district attorney asking if a prospective juror agreed with the statements: (1) "The presumption of innocence doesn't mean he's innocent" and (2) "he is presumed innocent? . . . That doesn't mean he is innocent." *Id.* at 423–24. The district court overruled both objections. During closing arguments, the district attorney stated: "It is the State's burden to prove the defendant's guilty beyond a reasonable doubt. So after you go back into that jury deliberation room and you deliberate this case, you can begin to consider something other than the presumption of innocence." *Id.* at 425. The defense objected, and the court told the assistant district attorney to "just stick with the jury instructions." *Id.*

The OCCA determined that the only misstatement of the law was withdrawn and that one objection to the assistant district attorney's correct statement of the law was actually sustained. The OCCA took particular note of the trial court's rulings on defense counsel's objections and correctly concluded the assistant district attorney's statements did not violate Meyer's constitutional rights.

The reference to handwritten notes, in which Meyer apparently planned the murder, as "murder notes" in the prosecution's opening statement did violate an order in limine, but the district court sustained Meyer's objection, admonished the jury to put the statement out of their minds, and threatened to sanction the prosecution if it

violated the pretrial order again.  Other references were during closing argument, and the order in limine only covered voir dire and opening statements.  Meyer limits his argument concerning prosecutorial misconduct to violation of the order in limine, and the one violation identified is far from enough to constitute prosecutorial misconduct.

The other asserted instances of prosecutorial misconduct involve inartful questioning by the assistant district attorney that fall far short of prosecutorial misconduct.  Meyer's objections to both of those statements were sustained, curing any potential error.  The claim of witness coaching also falls far short of prosecutorial misconduct as the supposed coaching did not suggest an answer to the state's witness.

Finally, Meyer makes the conclusory assertion that the prosecution "repeatedly insert[ed] statements and arguments designed to diminish the presumption of innocence during the trial" but does not specifically indicate what those statements and arguments were.  Aplt. Br. at 9.  We assume Meyer is referring to the above instances collectively, which for the reasons stated do not rise to the level of prosecutorial misconduct and did not diminish the presumption of innocence set forth in the jury's instructions.

D

In Issue Four, Meyer argues the district court should not have given deference to the state court's determination that Meyer's claim of ineffective assistance of appellate counsel was procedurally barred.  He makes procedural arguments here and raises related merits arguments elsewhere.  It is doubtful that those claims were

8

"fairly presented" in state court. *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009). Nevertheless, we address those claims individually out of an abundance of caution.

E

In Issue Five, Meyer asserts ineffective assistance of appellate counsel. A claim of ineffective assistance of counsel requires a showing of deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Meyer cannot show prejudice because, even if counsel had raised on direct appeal all of the grounds now asserted, Meyer would not have been entitled to relief.

Appellate counsel's failure to amend Meyer's appellate briefing in light of *Carpenter*[1] would not have entitled him to relief because he was not prejudiced by any ineffectiveness. The fundamental fairness of the proceeding did not depend on this issue when there was plainly probable cause for a CSLI warrant and there was other evidence placing Meyer at the scene—chiefly, the testimony of Brandi Henderson, a prostitute with whom Meyer had scheduled a meeting the night of the murder, and who testified Meyer had her drop him off and pick him up near the scene of the crime.

---

[1] In *Carpenter*, the Supreme Court held "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).

9

Meyer also asserts counsel was ineffective in not raising the following issues: "abuses of discretion not raised in the direct appeal"; "instances of prosecutorial misconduct, not raised in the direct appeal"; "law enforcement misconduct, constituting malicious prosecution"; that there was an "illegal search and seizure of telephone evidence, not raised in the direct appeal"; that he "was denied his constitutional right to the effective assistance of counsel"; that there was "insufficient evidence to prove petitioner guilty beyond a reasonable doubt"; and that he "was denied his fundamental right to be presumed innocent." Aplt. Br. at 12–13 (emphasis omitted). Rather than brief the issue, Meyer directs us to his state court filings. Even examining these filings and assuming no procedural bar applies, appellate counsel's failure to raise these grounds could not have prejudiced Meyer.

The purported abuses of discretion pertain to the refusal of the preliminary hearing judge to recuse himself because his mother, who was murdered, had the same first name as the victim in this case and the refusal of the same judge to permit examination of a witness at the preliminary hearing. The first ground is unpersuasive because it is too tenuous a connection to show any bias. The second is unpersuasive because preliminary hearings can conclude once the prosecution has established probable cause. *See* Okla. Stat. tit. 22, § 258. All other asserted abuses of discretion relate to matters that we address and find unpersuasive elsewhere.

The arguments regarding asserted prosecutorial misconduct are rejected for the reasons stated herein. Moreover, the prosecution had no obligation to investigate farfetched alternative theories given the clear evidence against Meyer.

10

Regarding cell phones, the record supports that the phones were seized under exigent circumstances, namely the fear that Meyer could destroy them or delete data in the time it would take to get a warrant, but that they were not searched for data until later, after a warrant had been obtained.

In asserting ineffectiveness of his appellate counsel for failing to raise ineffectiveness of his trial counsel, Meyer "acknowledges that his trial attorneys did an excellent job of representing him at trial." ROA Vol. 1 at 110. The asserted deficiencies of trial counsel are minor, and raising them would not have altered the outcome or affected the fairness of the proceedings. The record contains more than sufficient evidence to support the jury's verdict, including obvious drag marks, signs of strangulation, and notes in Meyer's own handwriting planning the murder.

Finally, for the reasons discussed above, Meyer was not denied the presumption of innocence and he was not prejudiced by appellate counsel's failure to raise those grounds on direct appeal.

F

In Issue Six, Meyer asserts that he is entitled to de novo review. As discussed above, we review legal issues de novo and give deference to findings of fact except where they are lacking evidentiary support. And here, any misstatements of fact did not affect the outcome in state court. Moreover, Meyer has not asserted a distinct ground for relief.

G

In Issue Seven, Meyer goes into more detail regarding the grounds for relief asserted in Issue Two.

Meyer asserts he was improperly prohibited from calling a witness at the preliminary hearing. But as discussed, the magistrate judge can end this hearing once the prosecution has established probable cause. Meyer confuses the rights available to him at trial with those that apply in a preliminary hearing.

Meyer takes issue with the state trial judge also presiding over the probate of Wilkins-Meyer's estate and the civil wrongful death suit filed against Meyer by Wilkins-Meyer's son from a previous marriage, including the judge issuing rulings in those cases before Meyer's criminal appeal was finalized. Nothing in the record suggests presiding over multiple related matters biased the judge, however, and judges often preside over related matters.

Meyer claims the trial judge should have allowed him to play the full video of Henderson's interrogation to show she was coerced into making up a story. But he asserts no legal basis for the admission of that video, and other evidence such as Meyer's handwritten notes and cell phone records corroborates much of her story.

Meyer again asserts claims arising from the assistant district attorney's reference to "murder notes," but we reject them for the reasons stated above.

Meyer claims the trial court should have denied the admission of enhanced photographs showing drag marks. But photo enhancement is a common practice, and Meyer was free to challenge the enhanced photos in cross examination.

12

Meyer asserts the trial court should not have allowed the prosecution to present and argue facts not in evidence, specifically regarding Henderson's testimony placing Meyer near the scene of the crime and other testimony that shards of glass were found on Wilkins-Meyer's jacket. But this testimony *was* evidence. The fact that the phone from which Henderson was called was never found, or that shards of glass found on the deceased's jacket were not presented to the jury are minor points in the context of the evidence presented at trial. Moreover, Meyer's contention that if Henderson's testimony about the call were true, she would be an accomplice, is unpersuasive. Henderson could easily have dropped Meyer off and picked him up without knowing that he planned to commit a murder.

Meyer reasserts prosecutorial misconduct. As discussed above, Meyer presents no evidence to support this claim.

Meyer asserts that denial of all of his motions in limine to exclude expert testimony is evidence of bias. While this briefing is threadbare, the more obvious reason for the denial of these motions is that denying the motions was a permissible decision. Examining Meyer's state court briefing, which provides more detail, it is clear that the issues Meyer had with the prosecution's expert witnesses were fodder for cross examination or closing argument but that permitting their testimony was well within the trial court's discretion.

Meyer claims the state court's freezing of his assets prior to trial prevented him from fully paying his attorneys and hiring necessary expert witnesses. But it appears he received representation through his direct appeal, and courts have systems

13

in place to ensure indigent defendants can litigate their cases. He says nothing about whether he sought such assistance or requested an exception to the freezing of certain assets to fund his defense. Moreover, given the quantity and variety of evidence against Meyer, it is unclear how having his own experts could have sufficiently discredited the State's case to the point of ultimately affecting the jury's verdict.

Meyer also asserts that the state trial judge should have recused from his state postconviction proceedings. She eventually recused herself, but Meyer contends the decision came so late that it affected the court's rulings on all his motions and objections that preceded her recusal. As grounds for disqualification, Meyer asserts the same allegations of bias he asserts elsewhere. Because we reject these arguments, the record does not support a determination that the judge should have recused herself earlier, so her timing was not improper. Moreover, it is doubtful that the extensions she granted were unlawful or would have been denied by a different judge.

Finally, Meyer claims appellate counsel was ineffective for not asserting insufficiency of the evidence as grounds for reversal. We disagree. While Meyer raises a number of challenges to the prosecution's case, the evidence taken as a whole paints a clear picture that Meyer murdered Wilkins-Meyer and badly staged the scene to look like an accident. It cannot be said that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hale*, 762 F.3d 1214, 1222–23 (10th Cir. 2014).

H

In Issue Eight, Meyer contends he should have been permitted leave to conduct discovery, an evidentiary hearing, and counsel.  Discovery is only granted "for good cause."  Rule 6(a) of the Rules Governing § 2254 Proceedings.  A hearing is only allowed "[i]f the petition is not dismissed," and counsel is typically only appointed if a hearing is granted.  Rule 8 of the Rules Governing § 2254 Proceedings.  Meyer has not shown good cause because, for the reasons discussed, none of the grounds asserted for relief are persuasive.  And the petition was properly dismissed, so he is not entitled to a hearing or counsel.

IV

The application for COA is therefore DENIED.  Accordingly, Meyer's motion for a hearing and appointment of counsel is DENIED.  The matter is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge